BOARD OF SUPERVISORS OF WARREN COUNTY *v.* COWAN & McCABE.

COUNTY. *Liability for attorney's fee. Power of Legislature to compel payment*
An act of the Legislature which assumes to create and impose on a county a liability for professional services rendered by attorneys, not to the county, but to private individuals therein in a contest in which the individuals are in antagonism to the county as a political entity, the official representatives of the county being their adversaries, is unconstitutional.

APPEAL from the Circuit Court of Warren County.

T. M. MILLER, ESQ., Special Judge, presiding by agreement of parties, Hon. WARREN COWAN being disqualified to preside in the case.

For the year 1880, the Board of Supervisors of Warren County levied a tax of twenty-two mills on the dollar of taxable property in the County of Warren. C. B. Allen and several other individual tax-payers of Warren County employed Messrs. Cowan & McCabe, attorneys at law, to

resist the collection of the tax of twenty-two mills, agree-
ing to pay them as a fee for their services, ten per cent
of the amount saved for each.   Cowan & McCabe accord-
ingly filed a bill in the Chancery Court of Warren County
and succeeded in reducing the tax to eighteen mills on the
dollar.   See 58 Miss. 143.   The amount thus saved to the
tax-payers of the whole county was something over $19,000.
The amount paid Messrs. Cowan & McCabe by Allen and
a few others was about $120.   By an act of the Legisla
ture, approved January 30, 1882 (Acts 1882, p. 740), it was
provided, that, " Whereas Messrs. Cowan & McCabe, attor
neys at law, of the city of Vicksburg, Mississippi, rendered
valuable services to the tax-payers of Warren County, Mis-
sissippi, in December, 1880, in that they, by their profes-
sional services in the case of *Beck, Tax-Collector,* v. *Allen,*
58 Miss. 143, and succeeded in having the levy of county
tax for said year reduced from twenty-one mills to seven-
teen mills on the dollar, whereby a large sum of money
was saved to the people of said county for said year ; and,
whereas, the Board of Supervisors of said county are power-
less to allow them a fee for the services so rendered ; now,
therefore (sect. 1), be it enacted by the Legislature of the
State of Mississippi, that the Board of Supervisors of said
County of Warren, be, and the same are hereby authorized
and required to allow, out of the county treasury of said coun-
ty, to said Cowan & McCabe, a fee equal to ten per cent
of the amount of money saved to the tax-payers of said coun-
ty for said year of their action and of the decision of the
Supreme Court in the case aforesaid in payment of their
services in said cause.   (Sect. 2) Be it further enacted, that
this act shall take effect and be in force from and after its
passage.   After the passage of this act, Messrs. Cowan
& McCabe presented their claim for $1,900.47 to the Board
of Supervisors of Warren County for allowance, but the
board refused to allow the same, and Cowan & McCabe
appealed to the Circuit Court, and from a judgment of that

court in favor of Cowan & McCabe, the Board of Supervisors appealed to this court.

*J. S. Morris*, for the appellant.

An act of the Legislature may assume either, first, to provide for the recognition and enforcement of a pre-existing claim supposed to have some foundation in equity and good conscience; second, to compel the creation of an obligation *in futuro*, as where it provides that a city shall purchase a park or engage in some other local enterprise; and third, to adjudicate upon and declare valid some doubtful or other claim made against a city. In either of these cases the act is subject to grave objections, involving the capacity of the Legislature to accomplish the purpose at which it manifestly aims. The case of the *Town of Guilford* v. *Board of Supervisors of Chenange County*, 13 N. Y. 143, is a leading case concerning acts of the first class. The commissioners of highways had prosecuted a suit by the direction of the voters of the town, and, being defeated, they had been compelled to pay the costs. They brought an action to oblige the town to reimburse them and were defeated in that also. Next they procured the passage of an act directing their claim to be submitted to the voters of the town, and declaring that the decision of the voters should be conclusive. At an election held under this act their claim was rejected. The passage of another act was then secured, under which the amount paid by the commissioners was to be ascertained, and was then to be assessed and awarded upon the taxable property of the town. The constitutionality of the statute was sustained; and Denio, J., in delivering his opinion, said: "The Legislature is not confined in the appropriation of the public moneys, or of sums to be raised by taxation in favor of individuals, to cases in which a legal demand exists against the State. It can thus recognize claims founded on equity and justice in the largest sense of these terms, or in gratitude or charity. Independently of express constitutional restrictions, it can make appropriations of money, whenever the public well-being requires or will be

promoted by it; and it is the judge of what is for the public good. It can, morever, under the power to levy taxes, apportion the public burdens among all the tax-paying citizens of the State; or among those of a particular section or political division." It will be perceived that this language concedes to the Legislature a power sufficient to consummate almost every conceivable scheme of legislative plunder. What claim may not be supposed to be supported, by either equity, justice, charity, or gratitude? The rule thus stated by Judge Denio has been recognized and enforced in a variety of cases; and, so far as it applies to claims founded in equity and justice, is too well settled to be overthrown. *Blanding* v. *Burr*, 13 Cal. 343; *Beals* v. *Amador County*, 35 Cal. 624; *Curtis* v. *Whipper*, 24 Wis. 355; *The People* v. *Mayor of Brooklyn*, 4 N. Y. 419; *Slack* v. *Maysville and L. R. Co.*, 13 B. Mon. 26; *Cheany* v. *Hooser*, 9 B. Mon. 330; *Sinton* v. *Ashbury*, 41 Cal. 525; *Creighton* v. *San Francisco*, 42 Cal. 446; *Brewster* v. *Syracuse*, 19 N. Y. 116; *Carter* v. *Bridge Proprietors*, 104 Mass. 236; Dill. on Mun. Corp., sect. 44. What claims are so founded in equity and justice as to fall within the protection of the rule, we must leave the reader to determine, if he can, by a study of the different cases. Certainly some claims have been upheld, whose equitable character is not more perceptible to us than is the equitable character of the claim of Hoagland, stated in the case to which this note is written. For Hoagland's property had been destroyed in order that the city of Sacramento might be protected. In such circumstances he was entitled to the charity, if not the gratitude, of the city and its inhabitants. The next class of legislative enactments to which we wish to refer are those compelling a municipal corporation to create a debt, without its assent, for some purpose of a private or local nature. Undoubtedly, the Legislature may impose on a city a liability of a public nature, as where provision is made for the erection of a court-house or public school building. *Thompson* v. *Lee County*, 3 Wall. 327; *The People* v. *Mitchell*, 35 N. Y. 551; *Sharpless* v. *Mayor*

*of Philadelphia*, 21 Pa. St. 147; *Thomas* v. *Leland*, 24 Wend. 67; *Kirby* v. *Shaw*, 19 Pa. St. 258. But a municipal corporation cannot be compelled to build a school-house to be owned by a private citizen. *Curtis* v. *Whipple*, 27 Wis. 350; *Jenkins* v. *Andover*, 103 Mass. 94.

"Neither has the Legislature any constitutional right to create a tax, or to authorize any municipal corporation to do it, in order to raise funds for a mere private purpose. No such authority passed to the assembly by the general grant of legislative power. This would not be legislation. Taxation is a mode of raising revenue for public purposes. When it is prostituted to objects in no way connected with the public interests or welfare, it ceases to be taxation, and becomes plunder. Transferring money from the owners of it into the possession of those who have no title to it, though it be done under the form of a tax, it is unconstitutional for all the reasons which forbid the Legislature to usurp any other power not granted to them." *Sharpless* v. *Mayor of Philadelphia*, 21 Pa. St. 147. "The constitutional principle, that no person shall be deprived of his property without due process of law, applies to artificial persons as well as natural, and to municipal corporations in their private capacity, as well as to corporations for manufacturing and commercial purposes. And when a local convenience or need is to be supplied, in which the people of the State at large, or any portion thereof outside of the city limits, are not concerned, the State can no more, by process of taxation, take from the individual citizens the money to purchase it, than they could, if it had been procured, appropriate it to State use." *Board of Park Commissioners* v. *C. C. of Detroit*, 28 Mich. 241. Hence, in the case just cited, and also in cases determined in the Supreme Court of Illinois, the power of the Legislature to compel a city to incur a liability for a public park was denied. *The People* v. *Mayor of Chicago*, 51 Ill. 17; *The People* v. *Solomon*, 51 Ill. 37; *Howard* v. *St. Clair Drain Co.*, 51 Ill. 130. The acts of the third class are those which assume to de-

termine the validity of some claim against a city. These acts, so far as they purport to be binding as adjudications, are without any validity. The Legislature cannot exercise judicial functions. *Sanborn* v. *Commissioners of Rice Co.* 9 Minn. 279. The acts in question may, however, operate as valid recognitions of claims which, though not enforceable at law, are founded in justice and equity. An examination of the decisions made in the courts of last resort during the past ten years all show a tendency to modify those previous rulings under which the power of the Legisla-islature was conceded to be little less than that of an unlimited despotism. With respect to municipal corporations, their indefeasible right to self-government in affairs of a purely local character has, within the period just referred to, been so ably maintained, that it may now almost be said to be firmly established. *The People* v. *Hurlburt*, 24 Mich. 44 ; *The People* v. *C. C. of Detroit*, 6 Ch. Leg. N. 176 ; *Spaulding* v. *Town of Andover.* 6 Ch. Leg. N. 215 ; *Mills* v. *Carleton*, 29 Wis. 400 ; *The State* v. *Toppin*, 29 Wis. 664 ; *Sanborn* v. *Commissioners Rice Co.*, 9 Minn. 279 ; *The People* v. *Lynch*, 51 Cal-15 ; *Board of Park Commissioners* v. *C. C. of Detroit*, 28 Mich 228 ; *The People* v. *Mayor of Chicago*, 57 Ill. 17 ; *Loan Asso. ciation* v. *Topeka*, 20 *Wall.* 655 ; *Lowell* v. *Boston*, 111 Mass- 454. When this right to self-government is fully recognized, its recognition must, of necessity, exempt these corporations from liabilities of a private character, to the creation of which they never gave their assent.

*J. S. Morris*, also made an oral argument.

*M. Marshall*, on the same side.

Contended that the act of 1882 is unconstitutional.

1. Because it is a judicial act in contravention of Art. III., sects. 1 and 2 of the Constitution of Mississippi. This act adjudges the right of appellees to recover of the county, for it requires the Board of Supervisors to pay it. And it ad-judges the *quantum* of recovery.

2. The act is unconstitutional because it attempts to create

an obligation against the county for a private purpose. In England the power of Parliament might be conceded to be greater; first, because there was no express Constitution higher than the Parliament, whose spirit might restrain, although its letter did not forbid the exercise of the power; secondly, Parliament being composed of the King, lords, including the judges, and being themselves the court of last resort and the Commons, comprised within itself all three functions of the government— executive, judicial and legislative. "The theory of our governments, State and National, is opposed to the deposit of unlimited power anywhere." Justice Miller in *Loan Association* v. *Topeka*, 20 Wall. 663; *Blanding* v. *Burr*, 13 Cal. 343. The act was for the issuance of bonds of the city of San Francisco to pay claims against the city, invalid in law, but just and equitable claims against the city. The defence was the illegality of the claims and want of power in the Legislature to give them validity. Field, J. (p. 3, par. 9) : " The question presented is not one of power in the Legislature to impose upon the corporation the payment of claims for which no consideration has been had, but of power to provide for claims meritorious in their character, for which an equivalent has been received, and from the payment of which the corporation could only escape upon strict technical grounds." " That the Legislature can provide for the payment of claims invalid in the forums of law but equitable and just in themselves, would seem unquestionable." Ibid., 351. " The power of appropriation which the Legislature can exercise over the resources of the State, for any purpose which it may regard as calculated to promote the public good, it can exercise over the revenues of county, city, or town, for any purpose connected with their present or past condition, except as such revenues may, by the law creating them, be devoted to special purposes." " In passing the law imposing the tax it can prescribe the objects to which the money raised shall be applied." " It is only for the convenient administration of the government that the State is divided into counties,

·cities, and towns. These political subdivisions are mere instrumentalities, with powers more or less enlarged according to the requirements of the public.· Their powers are subject to be increased, restricted or repealed, at the will of the Legislature, according to the varying exigencies of the State, vested rights acquired thereunder, as under all laws, only remaining unaffected.''

*M. Marshall,* argued the case orally.

*W. R. Spears* and *H. Ü. McCabe,* for the appellees.

The objection, as we understand it, to the constitutionality of the act in question is that it undertakes to impose a burden upon the county without its consent. In the first place, there is nothing to show a lack of consent, except the fact that the Board of Supervisors are opposing it. But if there were any evidence, or any conclusive evidence of it, still the authorities all agree that where the individual has a moral or· equitable claim against a political body of any kind, the Legislature may legalize that claim and compel the body to pay it whether they consent thereto or not. *Hoagland* v. *The City of Sacramento, California,* decided at April term, 1877, is cited and relied on by appellants in support of their position. In that very decision the position claimed by appellants is stated as the law and approved, and it is expressly there held that Hoagland '' had no claim *in foro conscientiæ,* even in the most unrestricted sense in which that term might be used.'' A stronger case in support of appellee's claim could hardly be found. There are numerous other cases decided in the same State, holding to the same doctrine contended for by the appellees. *Blanding* v. *Burr,* 13 Cal. 343; *Beals* v. *Amador Co.,* 35 Cal. 624; *Sinton* v. *Ashbury,* 41 Cal. 525; *Creighton* v. *San Francisco,* 42 Cal. 446. But the leading case on this subject, and the one most often cited and approved, is *The Town of Guilford* v. *Board of Supervisors of Chenango County,* 13 N. Y. 143. The following other cases are to the same effect :- *Hasbrouck* v. *City of Milwaukee,* 13 Wis. 50; *Curtis* v. *Whipple,* 24 Wis. 355; *The People* v. *Mayor of Brooklyn,* 4

N. Y. 419; *Slack* v. *Maysville*, 13 B. Mon. 26; *Chaney* v. *Hooser*, 9 B. Mon. 330; *Brewster* v. *Syracuse*, 19 N. Y. 116; *Carter* v. *Bridge Proprietors*, 104 Mass. 236; Dill. on Mun. Corp., sects. 39 (75), 44 (3d ed.), p. 100; Cooley's Const. Lim. 494; Cooley's Const. Lim. 490, note 1; *Thomas* v. *Ireland*, 24 Wend. 65; *Baltimore and Ohio Railroad Company* v. ———, 17 Wall.

CAMPBELL, C. J., delivered the opinion of the court.

This case involves the validity of an " Act for the relief of Messrs. Cowan & McCabe, attorneys at law, of Vicksburg, Mississippi," approved January 30, 1882.    Acts 1882, p. 740.

The power of the Legislature to deal with counties is great, but is not without limits, and while it is difficult to assign definite boundaries, it may be confidently affirmed that this act crosses them, for it assumes to create and impose on the county a liability for services not rendered to it, but to private individuals in a contest in which they were in antagonism to the county as a political entity, and in which the official representatives of the county were their adversaries.

Counties may be compelled to discharge obligations resting on them, but it is not allowable to assume what does not exist, and compel payment of a demand which has no foundation as a claim on the county, and no connection with the functions and purposes of county administration.    This act necessitates taxation, for the county has nothing except what is raised in that way.    It is not a legitimate exercise of legislative power to impose the burden of taxation on a county to pay what it does not owe in any just sense.    A. cannot be required to contribute of his means to B., for services rendered to private individuals, and a legislative declaration that such services constitute a just demand against a county is not conclusive, but must be finally passed on by the courts, for this is in its nature a judicial question.    Taxation for any other than a public purpose is unauthorized.    To declare the existence of an obligation which is without any just foundation, and decree

its payment by taxation is despotic.   There may be no power
to arrest the misappropriation of public money by the Legis-
lature, but it is nevertheless true that the application of such
money to any other than the legitimate purposes of govern-
ment is unjustifiable, whether it is controllable or not.   The
apprehension that improper use will be made of money raised
by taxation will not authorize interfence by the courts with its
collection; but if an act should be passed imposing a tax on
all the property in the State to pay an individual for a con-
test he had made with the State, it cannot be doubted that it
would be the duty of the courts to arrest the collection of
such tax as being foreign to the nature and purpose of
government.   The Legislature is not the depository of the
rights of property of the citizen who holds by the higher ten-
ure of the Constitution, with the judiciary it creates as its
guardian.

It is far less dangerous to recognize the right of the Legis-
lature to impose burdens that are unlawful on the whole State
than to permit an infringement of the rights of subdivisions
of the State.   The interest of all affords some safeguard
against an improper use of power ; but when, by the power of
the whole, it is proposed to fasten burdens on a sub-division,
the hazard of injustice is increased.   What concerns all may
secure such attention as to protect against abuse, but particu-
lar localities are liable to suffer at the hands of careless or
indifferent majorities.   The danger is that the representatives
of counties not proposed to be affected by a measure may not
feel a just interest in what affects only other localities, and the
apprehension that their counties, in their turn, may be made the
victims of like impositions is often found to be a too feeble
incentive to active resistance to the wrongs proposed to be
done to others.   The disposition to believe that the evil which
befals others will not come upon us renders us comparatively
careless as to the inflictions on others not immediately con-
cerning us.   A local measure is more likely to escape dis-
cussion and observation in the Legislature than one of general

operation. The greater danger, therefore, lies in local impositions, and the necessity for the exercise of the scrutiny of the courts to prevent wrong by legislation is the more pressing in case of subdivisions of the State than with respect to the State. The practice in legislative bodies, to a considerable extent, is to leave the measures proposed to affect only particular localities, and involving no general burdens, to the representatives of the constituencies to be affected, and what they approve is apt to pass without objection.

The foregoing view is the result of careful examination and consideration of the authorities. In all the books we have not found a decision or a *dictum* to sustain this act of the Legislature. If the right of the Legislature to compel payment of a moral claim is conceded, such concession will not support this act, for in our view no sort of obligation exists upon the county of Warren to pay for services rendered against the county as a political organism. "The laborer is worthy of his hire," but to be paid by his employer.

Judgment reversed, and judgment final here in favor of the appellant.